GROECK et al. v. SOUTHERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

No. 552.

1. PUBLIC LANDS—GRANT TO RAILROAD—SELECTION BY RAILROAD COMPANY—APPROVAL BY SECRETARY OF INTERIOR.
   Act July 27, 1866 (14 Stat. 294) § 3, granting lands in aid of the Southern Pacific Railroad Company, and providing that the lands shall be selected by the company "under the direction of the secretary of the interior," does not require that the selection shall be approved by the secretary.

2. SAME—COMPLIANCE WITH RULES OF INTERIOR DEPARTMENT.
   The selection of lands by the railroad company having been made in the form, and accompanied by the certificates, affidavits, costs, and fees, required by law and the rules prescribed by the secretary of the interior, and also in compliance with the general circular of instructions issued by the secretary of the interior, prescribing the form and procedure for the selection of lands by railroad companies within the indemnity limits, it was made "under the direction of the secretary of the interior," within Act July 27, 1866 (14 Stat. 294) § 3.

3. SAME—FILING MAP OF WHOLE ROUTE.
   Since Act July 27, 1866 (14 Stat. 294), conferred upon the Southern Pacific Railroad Company a present grant of land incapable of identification at the date thereof, but entitled the railroad company to select the granted lands opposite each 25 miles of road as the same was constructed and approved in the manner required by the act, the right of the company to select lands was not dependent upon its filing with the commissioner of the general land office a map of the definite location of every portion of the entire road, if the road was completed opposite the land selected.

Appeal from the Circuit Court of the United States for the Southern District of California.

Joseph H. Call, for appellants.
William Singer, Jr., for appellee.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. In this suit a decree was rendered in the circuit court in favor of the appellee, the Southern Pacific Railroad Company, upon a bill in which the said railroad company, as complainant, sought to establish a trust in, and to compel the conveyance of, 80 acres of land to which Otto Groeck had obtained a patent, which land, the bill alleged, had been granted by the United States in aid of the construction of the complainant's railroad. 93 Fed. 707. On a former appeal of the same case this court passed upon the principal questions which are involved. Railroad Co. v. Groeck, 31 C. C. A. 334, 87 Fed. 970. The case was then presented upon a plea to the bill. It now comes before the court upon issue joined upon an answer to the bill and a stipulated statement of the facts. Two questions in addition to those which were considered upon the former appeal are now presented: First, was it necessary that the selection of the indemnity land by the railroad company, including the land which is in controversy in this suit, should have been approved by the secretary of the interior? And, second, is the right of the railroad company to the land in controversy affected by the fact that no map of the definite location of a certain portion of the road was ever filed? Upon the first point it is urged by the appellant that an absolutely essential step to the acquisition of the indemnity land was the approval of the selection thereof by the secretary of the interior. The granting act does not, by its terms, require that the selection shall be approved by the secretary. The language of the act in that respect is that the indemnity land shall be selected by the company "under the direction of the secretary of the interior." Act July 27, 1866 (14 Stat. 294, § 3). It is urged that in this instance the selection was not made under the direction of the secretary of the interior, for the reason that that officer had approved the pre-emption entry of Groeck, to whom had been issued a patent for the land, and had denied the right of the appellee to select this tract of land, and that under the circumstances it was impossible that the selection could have been made under the secretary's direction. In the stipulation of the facts it is recited that the selection "was in the form, and accompanied by the certificates, affidavits, costs, and fees, required by law and the rules and regulations prescribed by the secretary of the interior and the commissioner of the general land office," and that the list was rejected "solely because of the pre-emption settlement, filing, entry, and patent of the defendant Groeck." It is stipulated, also, that the secretary of the interior had approved and issued a general circular of instructions relating to the adjustment of railroad land grants, prescribing the form and procedure for the selection by railroad companies of lands within the indemnity limits, and that the circular provided, among other things, that "the lists must be carefully and critically examined by the register and receiver, and their accuracy tested by the plats and records of their office. When so examined and tested, and found correct in all respects, they will become final locations, and you will, on the payment of the requisite fees to the receiver, so certify." It is admitted that the railroad company complied with this circular in all respects. We entertain no doubt that the steps so taken entitled

the company to a patent. On the former consideration of this case, and upon the facts which now appear in the stipulation, we held that the pre-emption entry of Groeck was made upon land which had been reserved from settlement, and that it was therefore absolutely void, and that the railroad company was not, by its delay in building the road, barred from asserting its title to the land in question so long as the United States had declared no forfeiture of the grant on account of the delay, and had not offered the lands to others for entry under the general land laws. Considering the language of the grant, it must be held that indemnity lands are selected under the direction of the secretary of the interior whenever the grantee thereof complies with the directions which the secretary has published for the regulation of such selection. The secretary was not clothed with the power to defeat the grant of the indemnity lands, or by capricious regulation to affect the title which was intended to be conveyed. Nor has the secretary in this instance made any regulation which has injuriously affected the right of the grantee. He had the power to prescribe in advance the method of making such selection, and, having prescribed it, and his directions having been followed, it cannot be said that the lands were not selected in the manner required by the granting act. That the secretary erroneously supposed that this land belonged to the defendant Groeck, and was not subject to selection as indemnity land under the grant, cannot affect the substantial rights of the grantee.

It is contended that the railroad company never acquired the right to select as indemnity land the tract in controversy, for the reason that it did not file a map of the definite location of its whole route. It is said that the right to make selection of indemnity lands did not accrue until the filing of such map of definite location. The statement of facts recites that the railroad company filed maps, in several sections, of the definite location of the whole road, excepting the portion thereof between Alcalde and Tres Pinos, and that the said maps were filed along the line which was shown on the general route map, and that that was the line upon which the road was constructed. In section 4 of the granting act of July 27, 1866 (14 Stat. 295), it is provided that when "it shall appear that twenty-five consecutive miles of said road and telegraph line have been completed in a good, substantial and workmanlike manner, as in all other respects required by this act, the commissioners shall so report under oath, to the president of the United States, and patents of lands, as aforesaid, shall be issued to said company, confirming to said company the right and title to said lands situate opposite to and coterminous with said completed section of said road. And from time to time, whenever twenty-five additional consecutive miles shall have been constructed, completed and in readiness as aforesaid, and verified by said commissioners to the president of the United States, then patents shall be issued to said company conveying the additional sections of land as aforesaid, and so on as fast as every twenty-five miles of said road is completed as aforesaid." By the granting act there was conferred upon the grantee a present grant of land, incapable of identification at the date thereof, but the title to which,

when identified, took effect by reason of the grant itself, which grant conferred the right to select the granted lands opposite each 25 miles of road as the same was constructed and approved in the manner required by the act. No question is made that the road opposite the land in controversy in this suit was so constructed, and that the map of the definite location of that portion of the road was filed, and that the said land was selected by the company. The right of the company to select the land in controversy was not made to depend upon its filing a map of the definite location of every portion of the road, or the construction of the entire road. In these respects the grant differs from that which was under consideration in the case of Railroad Co. v. Herring, 110 U. S. 27, 3 Sup. Ct. 485, 28 L. Ed. 56. In that case the grant was of "every alternate section of land designated by odd numbers for six sections in width on each side," to take effect "as soon as the road is completed." The lands were to be withdrawn only when the company had filed a map definitely showing its line. Concerning the question when the company's right to select indemnity lands attached, the court, construing the language of the granting acts, said:

"We are of opinion that no right of selection in any of these lands accrues until the entire line of the road to be built has been established by the company, and filed in the general land office at Washington, and that until then no duty devolves on the secretary to withdraw or withhold the land from sale or pre-emption. This is the necessary inference from the language both of the original grant of 1856 and the amendatory act of 1864."

But in the case now before the court the granting act, by its own terms, withdrew the land when the general route map was filed, as we held on the former appeal of this cause; and the indemnity lands were then withdrawn, as well as the primary lands. The joint resolution of June 28, 1870 (16 Stat. 382), authorized the construction of the road, "as near as may be," along the line of the general route so established, and directed the secretary "to cause patents to be issued to said company for the sections of land coterminous to each constructed section reported on as aforesaid, to the extent and amount granted to said company by the said act of July twenty-seventh, eighteen hundred and sixty-six." There is nothing in the provisions either of the granting act or the joint resolution to indicate that the right to select indemnity lands was dependent upon the completion of the whole line of the road. On the contrary, it is clear that the intention was that such selections might be made immediately upon the construction and acceptance of each 20-mile section. Both the primary lands and the lieu lands were to be patented as fast as the road was constructed and accepted, and the indemnity lands were selected. Congress subsequently affirmed this construction of the grant by declaring forfeited the grant of lands coterminous with the uncompleted section of the road, thereby confirming the grant of lands coterminous with the remaining sections of the road as it was completed. We find no error in the decree of the circuit court. The decree will be affirmed.